MAYER v. DETROIT YPSILANTI, ANN ARBOR & JACKSON RAILWAY.

1. MASTER AND SERVANT — STREET RAILROADS — INJURIES TO MOTORMAN—ASSUMPTION OF RISK—QUESTION FOR JURY.

In an action by a motorman against a street-railway company for injuries resulting from his losing control of his car on a grade for want of sand to use on the rails, evidence examined, and *held*, that whether plaintiff assumed the risk of his car sliding on a slippery rail was for the jury.

2. SAME—TRIAL—INSTRUCTIONS—SUFFICIENCY.

Instructions examined, and *held*, not open to the objection that the court left a clear inference that the fact that the plaintiff allowed the car to slide was enough to convict defendant of negligence, in view of other portions of the charge in which the jury were told that plaintiff must himself have been free from negligence.

3. APPEAL AND ERROR—REVIEW—QUESTIONS OF FACT.

This court cannot determine the truthfulness or weight of a witness' testimony.

4. MASTER AND SERVANT—INSTRUCTIONS TO SERVANT — RELIANCE BY SERVANT—PROPRIETY.

A street-car motorman, being fearful of the danger of operating his car without sand, on an incline, at a time when the track was slippery from frost, and communicating his fears to the superintendent, was justified in relying upon the superintendent's assurance that sand was not necessary, and that with care the cars could be operated successfully without it, the motorman having had no previous experience in operating cars upon a frosty track.

5. SAME—SAFETY OF APPLIANCES — DUTY OF MASTER — INSTRUCTIONS—SUFFICIENCY.

In an action against a street-railway company for injuries to a motorman claimed to have resulted from failure of defendant to provide sand and appliances for its use upon its cars, instructions examined, and *held*, not objectionable as charging that defendant was bound to use any known device for the protection and safety of plaintiff.

6. EVIDENCE—OPINIONS—COMPETENCY OF EXPERTS.

In an action against a street-railway company for injuries to a motorman claimed to have resulted from failure of defendant to provide sand and appliances for its use upon its cars, witnesses who have worked as motormen for defendant for several years, a part of that time upon the line upon which the accident occurred, are competent to state whether sand and appliances are essential to the safety of employés and passengers upon that line.

7. MASTER AND SERVANT — INJURIES TO SERVANT — STREET-RAILROAD COMPANY — DUTY TO SERVANTS — INSTRUCTIONS — SUFFICIENCY.

In an action against a street-railroad company for injuries to a motorman claimed to have resulted from failure of defendant to provide sand and appliances for its use upon its cars, the use, in instructing as to the duty of defendant to use reasonable precautions to avoid danger, of the words "public" and "passengers" in connection with "motorman," though unnecessary, is *held*, not misleading on the ground that the court submitted the case upon the theory that there was the same liability on the part of the defendant to its employés as to the public.

8. TRIAL — RECEPTION OF EVIDENCE — ADMISSION OVER OBJECTION —FORM OF RULING—REVIEW—QUESTION CONSIDERED.

Where, upon defendant's objecting to testimony offered by plaintiff, the trial judge stated that he left the responsibility with plaintiff's attorney, the ruling did not relieve the court of the responsibility, and the question, upon review, is whether the court was in error in allowing the testimony admitted.

9. MASTER AND SERVANT—INJURIES TO SERVANT — ACTION — EVIDENCE—INSTRUCTIONS TO SERVANT.

In an action against a street-railroad company for injuries to a motorman claimed to have resulted from failure of defendant to provide sand and appliances for its use upon its cars, plaintiff may testify whether he was ever notified by the company or its officers that it was necessary for him to have sand in pails or in boxes or any other way upon his car.

Error to Washtenaw; Kinne, J.   Submitted October 14, 1907.   (Docket No. 34.)   Decided May 1, 1908.

Case by Albert F. Mayer against the Detroit, Ypsilanti,

Ann Arbor & Jackson Railway for personal injuries. There was judgment for plaintiff, and defendant brings error. Affirmed.

*Corliss, Leete & Joslyn,* for appellant.

*A. J. Sawyer & Son,* for appellee.

MCALVAY, J. This is the second time this case has been before this court. In the opinion rendered on the former hearing, *Mayer* v. *Railway,* 142 Mich. 459, to which reference is had, appears a complete statement of the facts then before the court, which need not be here repeated. Such new facts as may appear in this record, which are material to the consideration and discussion of the questions raised, will be stated in connection with such discussion.

After the former decision the case was remanded for a second trial and an amendment was made to the declaration permitting evidence to show neglect of duty in not providing sand for use to control the cars when necessary by other means than automatic sand boxes. The case was tried and from a judgment for plaintiff defendant brings it to this court by writ of error for review. Defendant contended that under the undisputed testimony in the case plaintiff assumed the risks of his employment and cannot recover. The court refused to give a request to that effect. Upon the question of assumption of risk the court charged as follows:

"It is claimed by the defendant that the plaintiff assumed the risk of injury in this case. If you shall find from the evidence in this case that the danger and risk which caused this accident was as open and apparent to the plaintiff as it was to the defendant, and that he remained in the employ and service of the defendant with this knowledge of this risk and danger, then he cannot be heard to complain, and must be regarded as having assumed these dangers, and he cannot recover. But if you find from the evidence in this case that he became uneasy and solicitous about his ability as a motorman to

perfectly handle and hold the car without sand in pails or boxes or other like appliances, and that on the morning of the accident he went to the superintendent of the company, Mr. Carpenter, and communicated his fears to him, and that the superintendent of the company assured him that there was no danger if due care was exercised, and if you further find from the evidence that he relied upon this information and assurance of the superintendent, and that he did so because he believed that he could safely depend upon the opinion and judgment of the superintendent, who he believed was possessed of knowledge superior to his own, then, it seems to me and I so instruct you, that the defendant company ought not to be allowed to urge against the plaintiff that he assumed the risks and dangers which he sought to avoid and which he would have escaped but for the assurance of the superior officer of the company to whom he went for counsel and for safety to himself and the public."

The injury for which plaintiff recovered appears from the record to have been caused by a slippery condition of the rails known as "greasy." This condition is an unusual one and is caused by the frost, under certain atmospheric conditions, coming out on the rails. Plaintiff who entered defendant's employment in July previous to January 7th, the date of the injury, had experienced no trouble with a "greasy" track. The car of which plaintiff was motorman, in going down a grade, got beyond his control on account of "greasy" rails and the injury resulted. On the preceding day another car, in charge of another motorman, named Whitnorr, on the same grade, and at about the same place, got beyond control and made the same run down hill to the Michigan Central depot, striking and seriously damaging a hack standing near the end of the track.

Plaintiff, on the morning before his injury, talked with Mr. Carpenter, defendant's superintendent of the Ann Arbor city line, relative to this accident which occurred the day before, and the need to use sand on this grade. His testimony upon this matter is explicit and of considerable length. In substance, it shows that he was assured

by the superintendent that no sand was needed; that the trouble was with the man and not with the track; that any man with care could take a car down there with safety without the use of sand. He swears he believed and relied upon what the superintendent told him. Another witness, Huston, testified as to this accident a day or two before plaintiff was injured; that he saw the car off the track and it was necessary to pull it on with another car. Also that several cars ran off there during the same winter before this time; that Mr. Carpenter said sand was not needed to go down there.

Whitnorr testified as to his accident which occurred the day before the plaintiff was injured and also of conversations he had with Mr. Carpenter before that time, relative to slippery rails and the necessity of using sand, and that the superintendent told him sand was not needed. Plaintiff and Huston both testified that they had no sand on their cars and saw none on any car before that time. There was testimony tending to show that these cars could be controlled on this greasy track if sand was used on the rails. The court was not in error in submitting the question to the jury.

The portion of the charge covering the matter is not objectionable. Defendant is not correct in saying of this:

"The court leaves a clear inference that the fact that the plaintiff allowed the car to slide is enough to convict the defendant of negligence."

He had already charged that plaintiff must be free from negligence, and show that the accident was not due to his own carelessness and neglect. And later in the charge he said:

"The plaintiff, on entering the employ of the defendant, assumed the obvious risks and dangers incident and connected with his employment, and the defendant in this case had a right to expect that the plaintiff would be alert to inform himself of the existent conditions as to the track and weather, and he cannot attack the defendant from the shelter of unjustifiable ignorance of the machinery

and methods which he found in use at the time of his employment or which he was using at the time of his employment."

There is testimony in the case tending to show that Mr. Carpenter claimed to know and understand the danger in operating the car upon this grade. He was superintendent of the city lines, and, when plaintiff suggested the use of sand, assured him that it was not necessary. Plaintiff had never used sand. It was never furnished him, and he testifies he did not know that there was any to be had. This court cannot determine the truthfulness or weight of his testimony. The record tends to show plaintiff confronted defendant's representative with the situation and was assured that with the exercise of care the cars could be safely operated, and that sand was not necessary. Plaintiff was justified in relying upon such assurance. *Schlacker* v. *Mining Co.*, 89 Mich. 253; *Shadford* v. *Railway Co.*, 121 Mich., at pages 226, 227; *Burnside* v. *Novelty Manfg. Co.*, 121 Mich. 115, and cases cited.

The case of *Ragon* v. *Railway Co.*, 97 Mich., at page 274, which defendant contends controls this case, is clearly distinguishable. In that case plaintiff relied upon the supposed condition of the track. This court said:

"Plaintiff says he supposed the road was smooth, and did not know there were any holes there. He had been for some time in the defendant's employ, passing and repassing the yard and switch in question. It is plain that the condition of this side track could be seen by the casual observer. Self-preservation should have prompted him to look at this track to see whether it was in such condition as to warrant his going between a moving train and engine, though he had never seen the road before. It was in daylight, and he was not incumbered by a lantern. But, relying upon a supposed condition, he tells us he entered, and stepped directly into the hole between the ties."

In the case at bar we may assume from the record that the use of sand was necessary to make the running of the car under the conditions safe. Plaintiff did not know

this. He was talking with the superintendent about the car which ran away the day before, and asked him whether he did not think there should be sand and sand boxes on the cars. He was informed by Mr. Carpenter that it was not necessary. In following and relying upon this assurance, using as he claims great care, his car ran away with him and injury resulted.

Defendant also claims that the court was in error in charging the jury upon the theory that defendant was bound to use any known device for the protection and safety of plaintiff. No requests were presented by defendant calling attention of the court to this matter nor any stating defendant's views of the law upon it. The charge as given was not open to the objection made as will appear from reading it. The court charged upon this subject as follows:

" The particular negligence of which plaintiff complains and which he charges against the defendant as causing this accident is the alleged failure of the defendant to provide its railway cars with sand and sand boxes, or other suitable appliances for the casting of sand upon the rails of said railway track when the rails were slippery and there was danger by reason of the wheels sliding and thereby of losing control of the car.

" If you shall find from the evidence in this case that some time prior to the time the plaintiff's car ran away with him there were other cars of the defendant which had escaped the control of their motormen and ran way over substantially the same ground, going down the same hill under like circumstances, and from the same cause that caused the plaintiff's car to run away with him; if you further find these things were reported to the manager or superintendent of the defendant, then that would be notice to the defendant, and it should have made all reasonable efforts to avoid danger of imperiling the lives and limbs of its employés and passengers; and if you shall further find from the evidence in this case that after learning of the fact of the running away of its said cars prior to the plaintiff's injury, the defendant neglected to make all reasonable efforts to avoid a recurrence of such dangers, then the defendant would be guilty of negligence.

"If you shall find from the evidence in this case that by reason of the neglect of the defendant to make all reasonable efforts to avoid a recurrence of such danger, the plaintiff, without any fault or negligence on his part, but wholly by reason of the said negligence of the defendant, received the injuries of which he complains in this cause, then he is entitled to recover, unless you shall find that he assumed the dangers, about which I will state to you hereafter.

"If you shall find from the evidence in this case that reasonable care and prudence required the defendant to furnish the car upon which it required the plaintiff to go and which it required the plaintiff·to run over its tracks * * * with a bucket of sand and with a shovel with which to distribute the sand upon its track, or with sand and sand boxes or some other device or appliance or a mechanical contrivance which would be sufficient to control the speed of the said car while descending the decline on Detroit street from Division street to the Michigan Central passenger house, in all conditions of said tracks which might arise from the condition of the weather, and which were known to the defendant to occur at times, or which by the exercise of ordinary care and prudence it would have known did occur, and the defendant failed to do so, then it was guilty of negligence.

"If you shall find from the evidence in this case that from Division street to the Michigan Central passenger house along the line of the defendant's railroad there is an incline, and that the defendant knew, or by the exercise of ordinary prudence would have known, that said tracks were liable under certain conditions of weather to become slippery or greasy and dangerous to its motormen and passengers upon its cars, then and in that case it is the defendant's duty to supply the car upon which it required the plaintiff to perform the service as motorman with pails or boxes of sand and with a shovel with which to distribute said sand upon the rails of said track, or with the device known as sand boxes and sand, or with some other device or mechanical contrivance which should be sufficient, if properly used or applied, to control the speed of said car while passing from said decline from Division street to bridge point or to the depot in any condition in which said track was liable to be by reason of the change of weather, and if you shall find from the evidence in this case that said defendant failed or neglected so to do, then the defendant was guilty of negligence."

Defendant next urges that "witnesses were allowed to state their opinions as to whether sand appliances were used by other railroads under like conditions." The record shows that defendant is mistaken in this claim. These witnesses had worked as motormen for defendant for several years and each had run part of that time on the city line with these cars, and the question asked each was: "Whether or not sand boxes and sand or some sand appliances or device on the city cars was and is essential to the safety of the employés and passengers?" The witnesses were qualified to testify and the testimony related to these city cars, and to no other railroad. As already stated the record shows that the use of sand was necessary. The charge of negligence is that it was not furnished plaintiff. Defendant claims that sand was at hand for use and was used generally by the motormen. This testimony was therefore material even from defendant's point of view.

The court in his charge used the words "public" and "passengers" in connection with "motormen," but by doing so it cannot be claimed that the court submitted the case upon the theory that there is the same liability on the part of defendant to its employés as to the public. These portions of the charge are already given in this opinion. These words used were not necessary, but such use was not misleading.

During the direct examination of the plaintiff, after he had testified that he never had sand on his car nor was instructed that its use was necessary, he was asked:

"State whether or not you were ever notified that it was necessary—notified by the company or its officers—that it was necessary for you to have sand in pails or in boxes or any other way upon your car?"

Defendant objected for the reason that it was incompetent and immaterial.

"*The Court:* I leave the responsibility with Mr. Sawyer [plaintiff's attorney].

" *Mr. Sawyer:* I will take it. Exception for defendant.

"*A.* I never had any such instructions. I did not know at any time during my entire service of anybody else, or any other motorman upon the cars, using sand in pails or boxes or in any other form to control the cars."

The objection defendant raises to this is:

" It was error for the court to leave the responsibility of putting in incompetent testimony with the plaintiff's attorney."

The real question is whether the court was in error in allowing the question to be answered. The form of the ruling upon the question is unusual, but it does not for that reason shift the responsibility from the court. The objection to the question was properly overruled. We have considered all of the errors assigned, which are discussed by defendant, and do not discover any reversible error in the case.

The judgment is affirmed.

GRANT, C. J., and BLAIR, MONTGOMERY, OSTRANDER, HOOKER, MOORE, and CARPENTER, JJ., concurred.