WILLIAM R. ROACH & CO. *v.* BLAIR.

1. TRIAL—JURY—CHALLENGES—APPEAL AND ERROR.

Where appellant's attorney asked a juror, who was later excused for cause, whether or not he knew the insurance company which had the policy on plaintiff's building, and the juror's answer was excluded, any error that might have resulted from the ruling was harmless, as defendant was not compelled to exhaust its peremptory challenges, the question not arising as to any other juror; the court could not assume that counsel would have asked any other juror the same question, in the absence of anything in the record to so indicate, and while counsel may have been entitled to inquire if the juror was in any manner interested in the insurance company, the form of the question was not such as to lead to the exclusion of material information of that nature.

2. RAILROADS—NEGLIGENCE—SETTING FIRES.

Defendant receivers operated a railroad, which connected with plaintiff's warehouse by a siding.  In backing a freight car on the side track, the car was pushed too far and was derailed, and while the switch engine was mak-

ing an effort to draw the car back on the rails, a fire started in the roof of plaintiff's building, which destroyed it. The wind was blowing from the siding towards the building. The entire power of the engine was required to bring back the car to the rails and it several times emitted volumes of smoke and cinders; the track was also slippery and when the drivers slipped the volume of smoke and burning material was increased. There was expert testimony that the engine was improperly managed. *Held*, that the trial court was not in error in leaving to the jury the question of negligence in operating defendant's engine.

3. SAME—EVIDENCE—OPINIONS.

It was a proper subject for expert testimony as to what effect the slipping of the drivers would have and whether the engine was carefully handled.

4. EVIDENCE—VALUE—MARKET PRICE.

Testimony, in an action for setting fire to plaintiff's warehouse, that the building had no market value at the place and time of destruction, that the materials of which it was constructed were worth a stated amount, together with what were the other costs of building it and its age, etc., warranted the court in charging the jury that if they found the building had no market value, they should determine the fair cash value from such evidence.

Error to Oceana; Sullivan, J. Submitted January 21, 1915. (Docket No. 34.) Decided January 3, 1916. Rehearing denied April 21, 1916.

Case by William R. Roach & Company against Frank W. Blair and others, receivers of the Pere Marquette Railroad Company, for the negligent operation of one of its locomotives and the setting of a fire. Judgment for plaintiff. Defendants bring error. Affirmed.

*Parker, Shields & Brown* (*Charles E. Ward, S. L. Merriam*, and *J. C. Bills*, of counsel), for appellants.

*Cross, Vanderwerp, Foote & Ross* (*Zane, Morse & McKinney* and *Fred J. Russell*, of counsel), for appellee.

BIRD, J. Plaintiff was the owner of a large four-story building at Hart, which it used as a warehouse, for the storage of machinery, grains, and seeds. A side track on the north side of the warehouse connected it with defendant's line. Plaintiff requested defendant to place a car on the siding for the purpose of loading. On August 14, 1912, in complying with the request, the defendant's switch engine ran the car onto the siding and passed the warehouse door on to a slag pile, which was used as a bumper at the end of the siding. Its inability to stop the car at the warehouse door was said to be due to the fact that the track was downgrade and was slippery; owing to the grass which had grown over the rail. Two freight cars were then placed ahead of the switch engine to give it the proper amount of slack in starting, and the car was re-railed, but not without considerable effort. Soon after the switching crew had left, the northeast corner of the roof of the warehouse was observed to be on fire. By reason of its height and inadequate fire protection at Hart, the warehouse and contents were destroyed. The case was tried upon the theory that the fire occurred by reason of defendant's negligence, in that it failed and neglected to have the machinery, smokestack, and fire box of its engine properly equipped and in good repair, and, further, because the engine was not properly operated and managed. In reply to a special question the jury found that the engine, machinery, smokestack, and fire box were properly equipped and in good working order, but that the engine was improperly and negligently operated and managed. The jury returned a verdict for the plaintiff.

1. The juror Claude Till, when examined by defendant on his *voir dire,* was asked the following question:

"Do you know anything about an insurance company that insures canning factories, named the Canner's Exchange, or the Canner's Inter Insurance Bureau?"

The question was objected to on the ground that it was not a proper question to the juror, that it was immaterial and irrelevant, and the objection was sustained. Mr. Ward, counsel for defendant, then stated:

"I possibly ought to state that we claim that that is the party in interest in this case, really, the real party in interest. We claim the right to examine the juror as to his acquaintance with any such concern."

The trial court adhered to his ruling, and defendant's counsel excepted. This ruling is relied on as error. No further or other question was propounded to the juror, save the one quoted, but the juror was later excused for cause without objection when it was learned that he was in the employ of one of plaintiff's counsel. Counsel argue that the question was proper and should have been answered, in order that they might—

"ascertain whether the proposed juror was interested in the insurance company, or had relatives or friends connected with it."

Assuming that the question is properly before us, we think the question was one which was within the discretion of the trial court. It was not very material whether he was acquainted with any such insurance company. Undoubtedly counsel had the right to inquire whether he was interested in the insurance company, or whether he had any relatives connected therewith, but neither one of these questions was asked. The question asked was, "if he was acquainted with such company." We are not prepared to hold that the exclusion of an answer to the question under the circumstances was reversible error. We are further of the opinion that the question is not properly before us. Had this juror sat in the case, or had the circumstances driven defendant's counsel to exhaust its peremptory challenges, the record would have been

in form to raise the question, but the juror was excused for cause, and therefore no injury resulted, even conceding the court was wrong in his ruling. Neither this question nor any other question pertaining to it was propounded to any other juror. Neither was any request made that counsel should have the benefit of the same examination with any of the other jurors. It must be admitted that, so far as Till was concerned, the error, if it were one, was harmless, and as it was raised with no other juror, the record does not present a basis for raising the question. This court cannot assume that counsel desired to or would have asked the same question of other jurors.

2. It is urged that, under the undisputed testimony, the jury should have been instructed, in accordance with defendant's fourth request, that the engine was properly managed on the occasion in question. The testimony shows that in attempting to re-rail the car, the whole power of the engine was used, and that she threw out of her stack large volumes of smoke and fire, and that on several occasions, when the drivers slipped, the volume of smoke and fire was increased. While laboring under these conditions, the engine stood nearly under where the fire was first seen on the roof, with the wind blowing from the northwest. A witness who qualified as an expert testified, in answer to the hypothetical question, that in his opinion the engine was not properly managed. The testimony of this expert witness was subsequently stricken from the case, but we think it was competent. What effect the slipping of the drivers would have on the fire, and whther she was properly handled, having in mind the surroundings, was a proper subject of opinion evidence for those who were skilled in the operation of locomotives. See McDonald v. Railroad Co., 108 Mich. 7 (65 N. W. 597) ; Mayer v. Railway, 152 Mich. 276 (116 N. W. 429). The testimony offered, bearing on

defendant's negligence, raised an issue for the jury.

3. Complaint is made that the rule given to the jury to determine the damages to the building was not the proper one. The trial court instructed them that if they found the plaintiff was entitled to recover it was—

"entitled to recover from the defendants as damages such as will fairly compensate it for its loss by reason of said fire, which sum is measured by the fair cash value at said time and place of said property which was destroyed by said fire, and the diminution in value of property injured and not destroyed, caused by said fire, not exceeding the amount claimed by the plaintiff. * * *

"There has been evidence here as to the price paid by the plaintiff for the real property—and by that it means the building or the land on which the building stood—and evidence of repairs and remodeling of the interior of such building, and there has been evidence as to the amount of material in the construction of the building at the time of the said fire and the worth and value of the material, if new, and evidence as to the labor and material required to replace such a building, and also evidence as to the fair cash market value of the building. All these matters have been received as bearing on the one question of its fair cash value at the time and place of the fire."

They were further instructed, in substance, that, if the building had no market value in Hart, then they should determine what its real cash value was at the time and place.

It is insisted that the true measure of damages was the market value, and that it was error to admit testimony bearing upon its cost and the value of the materials that went into it. It was said in the analogous case of *Close* v. *Railway,* 169 Mich. 392 (135 N. W. 346), that:

"Where property destroyed had no market value, the real or ordinary value, based upon all facts connected with such property, such as its cost, its uses to which it has been put, its age, its condition, location,

and the like should be determined.   3 Elliott on Railroads, § 1239."

The plaintiff offered testimony that a building, the character of the one which was destroyed, had no market value in Hart, and, relying upon this showing, the plaintiff proceeded to show that it had a true cash value, and introduced testimony of its size, location, the materials with which it was built, its age, for the purpose of enabling the jury to determine what the actual cash value was.   The instructions appear to be in accord with the general rule applicable to such cases.

4. Under its plea defendant gave notice that it would show upon the trial that the side track was constructed for plaintiff or its predecessor in title, in pursuance of a certain contract or lease, the terms of which exempted defendant from liability in such cases. Plaintiff demanded an inspection thereof, and the trial court, after a hearing, made an order of discovery. This order was never complied with, presumably because the defendant could not produce it.   On the trial defendant offered an "application" for a side track, signed by the Hart Potato Starch Company, a former owner of the premises, together with a form of contract or lease which it undertook to prove always followed the acceptance of such applications.   It appeared, however, from its own witness, that the contract or lease did not always follow the application. The trial court excluded the application and this phase of the defense, and counsel assign error on the ruling. The supplementary proof by which it was attempted to make the application admissible was not conclusive enough to make it admissible.   We see no error in the ruling.

5. Appellant complains in numerous assignments of the rulings of the trial court, in the admission and re-

jection of testimony, and in connection with these complaints in many instances he quotes question and answer of counsel and witness, and also the rulings and remarks of the court, for the purpose of showing the unfair attitude of the court. We cannot well give attention in this opinion to all these assignments. It will suffice to say, however, that we have given them careful attention, and find that the record discloses many instances in which the trial court restricted the right of cross-examination; but in most of them we think the trial court was justified in so doing, as the examination had wandered too far from the issue, and in other instances we are of the opinion that the trial court was not as liberal as he might have been. Instances also appear where the trial court exhibited impatience, but we find nothing in the rulings nor in the attitude of the court which merit a reversal of the case. The trial was a long one, with a large amount involved, with able counsel pressing their several contentions with a great deal of zeal. This necessarily created a trying position for the trial court, and that he should, at times, have grown impatient and rather discourteous is not to be wondered at.

We find no reversible error in the remaining assignments. The judgment will be affirmed.

STONE, C. J., and KUHN, OSTRANDER, MOORE, STEERE, and BROOKE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.