# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CLEVE WESTBROOK III.

---

PEOPLE OF THE STATE OF MICHIGAN,

       Petitioner-Appellee,

v

CLEVE WESTBROOK III,

       Respondent-Appellant.

UNPUBLISHED
April 19, 2018

No. 338559
Kalamazoo Circuit Court
LC No. 2012-000251-DL

---

Before: GLEICHER, P.J., and M. J. KELLY and CAMERON, JJ..

PER CURIAM.

Respondent appeals the family court's order waiving jurisdiction and allowing for his prosecution in an adult circuit court. We affirm.

Respondent was a 16-year-old minor while on juvenile intensive probation and in the ON-TRAC Residential Treatment Unit, which is a cognitive behavioral program in Kalamazoo County. Although respondent initially failed to make any progress for the first six months of his probation, he eventually progressed in the ON-TRAC program to the point that he earned a 75-day community pass, which required monitoring via a GPS tether.

After entering the community, however, respondent cut off his GPS tether and engaged in a two-day crime spree, during which he committed at least 10 felonies. On the first day, respondent used a handgun to cause a disturbance inside of a local business, fled the scene in a vehicle, refused to pull over for police, and abandoned the vehicle leaving behind a handgun, marijuana, and Xanax pills. Two days later, respondent again refused to stop for police while driving a vehicle, attempted to elude the police, and jumped out of the vehicle while it was still moving, which caused it to almost hit a house. Respondent was apprehended after this incident, and police again found a handgun, marijuana, and pills inside the vehicle.

The prosecution motioned the family court to waive jurisdiction over respondent so that he could be processed as an adult in the circuit court for two counts of fleeing from a police officer, two counts of felony-firearm, two counts of carrying a concealed weapon, two counts of possession of a controlled substance, receiving and concealing a firearm, and assaulting a police officer. The family court granted the motion, and respondent now appeals.

-1-

Respondent argues that the family court erred in its evaluation of the statutory factors in making its determination to waive jurisdiction over him. We disagree.

The family court's findings of fact are reviewed for clear error. MCR 3.902(A); MCR 2.613(C); *In re Fultz*, 211 Mich App 299, 306; 535 NW2d 590 (1995), rev'd on other grounds 453 Mich 937 (1996). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008) (quotation marks and citation omitted).

"A probate court's[1] order waiving jurisdiction will be affirmed whenever that court's findings, based on substantial evidence and thorough investigation, show either that the juvenile is not amenable to treatment or that, despite his potential for treatment, the nature of his difficulty is likely to render him dangerous to the public, if released at age nineteen or twenty-one, or to disrupt the rehabilitation of other children." *People v Fowler*, 193 Mich App 358, 363; 483 NW2d 626 (1992), citing *People v Dunbar*, 423 Mich 380, 387; 377 NW2d 262 (1985).

The family court's ability to waive jurisdiction is governed by MCL 712A.4 and MCR 3.950. A family court may waive jurisdiction over a juvenile offender on motion of the prosecution if the juvenile offender is 14 years old or older and is accused of committing a felony. MCL 712A.4(1). The waiver hearing is conducted in two phases. MCR 3.950(D). The first phase is to determine if the juvenile offender committed a crime that would be considered a felony if committed by an adult. MCR 3.950(D)(1); MCL 712A.4(3). Respondent waived the first phase of the hearing, as allowed by MCR 3.950(D)(1)(c)(*ii*). Therefore, only the family court's findings and decision regarding phase two are at issue on appeal.

Phase two of the hearing seeks to determine "whether the interests of the juvenile and the public would best be served by granting the motion." MCR 3.950(D)(2); see also MCL 712A.4(4). The prosecutor has the burden of proof to establish "by a preponderance of the evidence that the best interests of the juvenile and the public would be served by waiver." MCR 3.950(D)(2)(c). In making its determination on the second phase of the hearing, the family court is to consider:

(*i*) the seriousness of the alleged offense in terms of community protection, including, but not limited to, the existence of any aggravating factors recognized by the sentencing guidelines, the use of a firearm or other dangerous weapon, and the effect on any victim;

(*ii*) the culpability of the juvenile in committing the alleged offense, including, but not limited to, the level of the juvenile's participation in planning and carrying out the offense and the existence of any aggravating or mitigating factors recognized by the sentencing guidelines;

---

[1] The former version of MCL 712A.4, amended in 1996, read that the transfer would be to the juvenile division of the probate court, rather than to the family division of the circuit court. See MCL 712A.4, as amended by 1996 PA 409.

(*iii*) the juvenile's prior record of delinquency including, but not limited to, any record of detention, any police record, any school record, or any other evidence indicating prior delinquent behavior;

(*iv*) the juvenile's programming history, including, but not limited to, the juvenile's past willingness to participate meaningfully in available programming;

(*v*) the adequacy of the punishment or programming available in the juvenile justice system;

(*vi*) the dispositional options available for the juvenile. [MCR 3.950(D)(2)(d)(*i*) to (*vi*); see also MCL 712A.4(4)(a) to (f).]

Of the six factors, the family court must give "greater weight to the seriousness of the alleged offense and the juvenile's prior record of delinquency than to the other criteria." MCL 712A.4(4). In addition to the statutory factors, when making its determination regarding waiver of jurisdiction, there must also be evidence on the record, to which the family court must refer, regarding the relative suitability of programs and facilities available in the juvenile and adult correctional systems. *Dunbar*, 423 Mich at 388.

We note that respondent does not address the trial court's findings as to the first three factors, including the two that must be given greater weight—the seriousness of the alleged offense under factor (*i*) and the juvenile's prior record of delinquency under factor (*iii*). Instead, respondent only takes issue with the family court's analysis and consideration of factors (*iv*) to (*vi*) in addition to its analysis of the relative suitability of programs and facilities available in the juvenile and adult correctional systems. We address each factor in order.

Turning first to the seriousness of the alleged offense, the family court noted the severity of the 10 alleged felonies against respondent. They included fleeing police, weapons charges, and drug charges. Notably, respondent entered a local business with a 9-millimeter hand gun, causing a disturbance to those inside. In a matter of days, respondent fled police on two separate occasions, was in possession of analogue pills and marijuana, and even jumped from a moving vehicle causing it to drive up onto a curb. His police chases endangered the community, and it was fortunate that no one was injured. The serious nature of these offenses cannot be understated, and the family court did not err when it concluded that the seriousness of the offenses weighed in favor of waiving jurisdiction.

As to factor (*ii*), the culpability of the respondent, the trial court concluded that respondent was highly culpable in all of the alleged offenses. He was the one wielding the firearm, driving the vehicle, running from the police, and possessing the drugs. Moreover, respondent's choice to leave the juvenile facility and cut the tether was his choice alone, and he appeared to be the leader of the group that caused the disturbance inside a local business. We conclude that the family court did not err in weighing this factor in favor of waiving jurisdiction.

Respondent has a lengthy juvenile record, as the family court noted under factor (*iii*). Respondent's criminal history began when he was only 13 years old. His record included weapons charges, drug charges, resisting arrest, unlawful driving away of a vehicle, and home

-3-

invasion. In fact, he had previously cut his tether and went on the run in 2014. The trial court also acknowledged respondent's poor history in school, which included numerous behavioral issues and poor performance. Overall, the trial court did not err in finding that factor (*iii*) weighed in favor of waiving jurisdiction.

On appeal, respondent has taken issue with the final three factors under MCR 3.950(D)(2)(d). These arguments are without merit.

The family court noted that respondent received services in his school and through the Department of Health and Human Services before becoming involved with the juvenile justice system. It also noted that respondent had been on intensive probations, including his placement in in-home detention with GPS monitoring. It took notice of respondent's having cut off his GPS tether at least three times during that placement. It then discussed that respondent was involved in a plethora of programs, including those offered through ON-TRAC. The family court also took note that respondent did not take advantage of the Job-Corps opportunity that was offered to him through ON-TRAC. The family court opined:

> [Respondent] has participated in many services, but appears to have just gone through the motions. He has participated in so many activities and so many people have worked with him to help him, and yet he continues to participate in criminal activities that are risky, involving weapons, drugs, and dangerous operation of vehicles.

The family court also discussed that the threat of juvenile detention was "not a serious deterrent for [respondent]." That is, juvenile detention was not an adequate punishment. The family court also noted that, despite respondent's participation in programs and services, including the most intensive services that could be offered (ON-TRAC), he still engaged in a life of violent and dangerous crimes at his earliest opportunity. That is, the programs were inadequate to address respondent's issues. This is buttressed by the family court's specific statement that "[p]rogramming available in the Juvenile Home is inadequate for [respondent]."

The family court additionally noted that the ON-TRAC program director was willing to accept respondent back into the program and modify it to fit his needs. However, the family court also noted that, despite his participation in the program, respondent did not seem to be benefiting from it. Moreover, the family court noted when respondent reached the age of 17, which was less than three months away, he would "age out and be removed from the [ON-TRAC] program." It further opined, "Maintaining him in the Juvenile Home and modifying programs further for him, this [c]ourt believes will not change his thinking and behavior sufficient that he will not continue to be a danger to the community." The family court stated that "the dispositional options available for [respondent] as a juvenile" were "inadequate."

Lastly, the family court discussed that at least one of the programs, Moral Recognition Therapy, was also available in the adult justice system, which the on-staff psychologist at ON-TRAC confirmed. Additionally, the family court discussed that respondent had a mentor, who was willing and able to continue mentoring respondent if respondent were placed in the adult justice system. The family court noted that the mentor's role was to help adult inmates with

community service, to find part-time employment, enroll in AA/NA, and find other recovery services.

Considering the above evidence, we are not "left with a definite and firm conviction that a mistake has been made." *Miller*, 482 Mich at 544 (quotation marks and citation omitted). The family court addressed respondent's programming history, the adequacy of the punishments available in the juvenile justice system, and the dispositional options available to respondent. Taken together, the trial court properly concluded that, despite some progress made later in these programs, the overwhelming evidence weighed in favor of waiving jurisdiction. Therefore, we hold that "based on substantial evidence and thorough investigation . . . despite [respondent's] potential for treatment, the nature of his difficulty is likely to render him dangerous to the public, if released at age nineteen or twenty-one, or to disrupt the rehabilitation of other children." *Fowler*, 193 Mich App at 363. Accordingly, we hold that the family court did not err in waiving jurisdiction over respondent.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly
/s/ Thomas C. Cameron